Just as a logistical matter before we start, for those out there, we will probably take a brief break after 25-1296, United States v. Medina. With that said, we're ready to hear the first case, which is 25-8004, United States v. Kahn. Counsel for appellant, if you'd make your appearance and proceed, please. May it please the court. My name is Beau Brindley, and I represent the defendant appellant, Shaquille Kahn. Following the remand of his case to the district court after the issuance of the opinion in Ruan and this court's opinion in Kahn too, the retrial in this case was focused on a single legal concept, and that concept was authorization. The question from the beginning through the end was whether Dr. Kahn knowingly issued prescriptions that were unauthorized, and therefore the legal definition of authorization was critical in this case. However, in this case, the government's expert witnesses, over objection from the defense, were allowed to explicitly define what they claimed was the standard, the legal standard, for authorization. They gave their opinion on what that standard was, and then they explicitly asserted that failing to meet that standard made Dr. Kahn guilty. As the SPECT case cited in our brief made plain, this was a violation of Rule 702, obviously, as experts are not permitted to define legal standards for the jury. And when they do, it is veritably impossible to determine whether those opinions infected the jury's deliberations. Mr. Brindley, if I may pause for a moment, pause you for a moment. You referred to over the objection of the defense. Where did the defense object on 702 grounds to the testimony of the expert witnesses that you're challenging now on appeal? We objected during the testimony of Inspector Investigator Churchwell. We had a heated objection regarding Churchwell's ability to provide testimony regarding the regulation, language, and the meaning of the regulation. We argued it was irrelevant. We argued it was not a proper expert opinion. We continued that objection during testimony from Dr. Jed Shea. And what do you mean? What do you mean? What do you mean? I'm sorry. Even with more broad, in some respects, and with respect to the testimony of Dr. Gina Moore. In every instance, we objected that it was inappropriate for expert witnesses to be commenting on the legal standard for authorization. And it was particularly problematic with respect to Inspector Churchwell. He set the stage, and we put into evidence, or the governor put into evidence, I should say, the regulation itself. And then he said that was the standard for authorization. And then he went on to talk about how his investigation indicated that Dr. Codd… Mr. Brindley, Mr. Brindley, can I stop you for a second? What do you mean you continued the objection? Are you saying that you contemporaneously objected to these other witnesses beyond Churchwell? Yes. All right. There were objections. There were objections. I won't delay us too long, but that's not my recollection of the record. You articulate 702 objections to all of these witnesses. That's what you're telling me. That is my recollection of the record, Your Honor, yes. Okay. All right. We'll move on for the moment. Go ahead. Mr. Brindley, could I just jump in on a related question? Would you agree that there's a difference between one or any of the witnesses defining the authorization standard on the one hand and referring to the authorization standard on the other hand? Are the witnesses prohibited from even mentioning the standard? No. I think that's clear from some of the pre-Ruan cases. I don't think Ruan changes that. They can refer to certain language that's used, such as outside the usual course of professional practice, not for a legitimate medical purpose, for the purposes of providing objective evidence that the jury can use to evaluate the defendant's intent. That's what this court said was appropriate in Contu. But what's not appropriate is defining the legal standard and saying the standard for authorization is this, according to Investigator Churchwell. And according to Dr. Shea, you're guilty. Guilty was the word he used, if you don't follow that. And the problem is even worse in this case, because in the end, after arguing about this throughout the course of the trial, Judge Johnson ultimately agreed with the defense and gave a jury instruction that instructed based on the statutory language and not the regulation and told the jurors that violation of a regulation is not a crime. It's not a violation of the criminal statute. And so the problem is we had expert witnesses telling them, in Jed Shea's case, it is a crime. And the crime that it is is violating a regulation that Investigator Churchwell said was the standard for authorization, the legal standard, which the government admitted in their brief. That's what they were doing. They were putting on evidence of what these people thought the legal standard was. And what they thought the legal standard was differed from what the district court thought the legal standard was. Well, counsel, counsel, could I just on that on that point, if I'm understanding your argument correctly. Tell me if I'm wrong. You're you're saying that the jury instruction that was given your instruction number 20 varied from the authorization standard in the 13 0 6 0 4 provision. Is that is that correct? Absolutely. All right. And what were the material differences between the two? The material differences are at the heart of litigation in Rouen and then the litigation. Now, in this case, it all comes down to whether or not the vague language of usual course of professional practice. And legitimate medical purpose, whether those phrases are used in the statute. It doesn't make reference to either legitimate or usual. And of course, the problem with those terms created the argument to Judge Johnson and the Supreme Court found on Rouen they're vague. I mean, these are vague terms and they're circular and it's hard to understand what they mean. What is the usual course of professional practice? How usual does it have to be? And who gets to decide? Same thing. What is legitimate medical purpose? What makes it legitimate? Who decides what's legitimate versus not? Counsel, counsel, every day in America. Don't don't experts testify about standard of care in analogous in analogous context, medical malpractice context. They testify as to what the standard of care is. Do they not? They testify to what the standard of care is, but the standard of care, first of all, there's two differences there. One, they weren't talking about standard of care here. They were talking about the definition of legal authorization that defines whether or not something is a crime. And that's the critical difference. They weren't defining what the crime is and they were defining it in a way that was different than what the judge said. I mean, they said in the terms of Jed Shea, he said, if you act outside of what the norms are in the medical community, you're guilty. And Judge Johnson let's let's quite a violation quite apart from the statement about you're guilty. Would he do you accept that he could say that the conduct of the defendant was outside of the course of legitimate medical practice? He could say that. OK, so. So the idea, your problem, then, is just the extension of that to the phrase about you're guilty. As it relates to my problem. Yeah. In that instance, in that specific instance with Shea, I agree. OK. Yes. Yes. Now, with respect to to Churchwell, the bigger problem isn't he wasn't just saying that he's outside of the usual course of practice. He didn't use the terms of art that have been used in other trials like this in the past. What they what they did was because authorization was so important, they started talking about what defines legal authorization. And he said legal authorization is decided to find this way. And the case law is cited in our brief is pretty clear. You can't define the standard. You can't. You can say whether the doctor acted outside the usual course of practice in your opinion, but you can't tell the jury what that means is that he's legally unauthorized. But they did that. And in this instance, the Ruan decision changed cases like this because now, for the first time, authorized is the element. The element is not outside the usual course. It's not for no legitimate medical purpose. This court was very clear in its opinion. Authorization is the element. Let me but counsel counsel counsel counsel, let me shift you for a second here to talk about your sufficiency argument. Does that argument hinge on discrediting the testimony of Dr. Hale? It hinges on internet. I don't know why I like the word discrediting, but it hinges on the fact that Dr. Hale gave opinion testimony that completely disregarded alternative possibilities. And based on her testimony in the trial, she admitted essentially that she just didn't give any credence to other clear possibilities and didn't give any justification for why not. And her own Ipsy Dixit is, as we indicated in the briefs, is all that she had to say this was because of the prescriptions from Dr. Khan, rather from the seizures that she was having the day before. And there was no basis for saying that. And so without it, you said you said there's there's no basis for saying that in effect. Are you challenging the foundation for her testimony in a way that could have been raised in a Daubert context? I don't think it's a Daubert issue. I mean, I think she's qualified. Well, what was it? Was it reliable testimony? Qualified. There are elements to the Daubert test, right? But the specific part of this that was challenged ultimately through the course of her testimony at the trial was not something that was highlighted in an expert report such that it would have been subject to a Daubert objection. And this was something that came up in the way that she testified at trial and in the way that she responded when presented with alternatives. And the way that she responded was to provide no justification for why they should be ignored and to essentially make it plain that she – what she did as was elucidated from the testimony during the trial. Well, she came to a conclusion and then tried to form the bases around that. The conclusion obviously came first. Well, counsel, counsel, counsel, I mean, this may be a compelling argument that was made to the jury, but you keep saying it was challenged before the jury. And in your opening brief, I think you wrote that the cross-examination, I believe your cross-examination was aggressive and thorough. In other words, the jury heard your challenges. So how do we translate your arguments now into a sufficiency challenge on appeal? Well, the problem in terms of sufficiency for Dr. Hale, and the jury is not in a position to make the legal determination. But legally, when we look at it, even viewing the evidence of light most favorable to the government, in order to establish that this was the cause, there would have to be something more than assumptions. The case law has said that. Regardless of if the jury understands that or not, there has to be more than the expert's assumptions. And with Dr. Hale, the expert's assumptions are all that appear to be to justify this cause versus the other. And if there is nothing else at this time, I'd like to reserve my last minute. That's fine. Good morning. May it please the court. Seth Griswold, appearing on behalf of the United States. The defendant makes essentially two overarching arguments on appeal, and the United States is asking that this court affirm the defendant's convictions. Because one, the government's experts did properly refer to the law and standards of care when expressing their opinions. They referred to the correct law, which is authorization defined by 130604. And then two, there was sufficient evidence that Kahn managed at least nine co-conspirators in his pill empire, and there was sufficient evidence to show that the but-for causation of Jessica Birch's death was the oxycodone prescribed by Shaquille Kahn. Starting first with the expert testimony, getting to something that hasn't been discussed much yet, all of these arguments are precluded by the law of the case doctrine. We actually have a Russian nesting doll of preclusions here where there's multiple ways this is precluded by law of the case doctrine and waiver. These arguments were not brought at the first trial, at the first appeal, in front of the Supreme Court, neither to the form of the testimony of the experts or to the definition of authorization. As said in Rouen at page 455, we assume, as did the courts below and the parties here, that a prescription is authorized and therefore lawful if it satisfies the standard, which they were talking about, 130604. This argument is flatly precluded and waived by the defendant. So if there's a new trial, these issues can't even be raised at trial? Correct, Your Honor. In this case, on this issue, because it was precluded by law of the case, they did not raise these objections. Is law of the case rigidly binding on something like this, given that this case goes up to the Supreme Court, we remand for new trial, there's a do-over, the witnesses come back in, the objections are made, and I think what I'm hearing from you is that we aren't even supposed to address those issues. Is that what you're saying? In this case, for these issues, yes, Your Honor. Do you have a case that matches up with that scenario of events, and an appellate court has said after a retrial that they're not going to reach the issue? I'd have to refer to my brief and encourage the court to refer to a brief for the citations for the law of the case doctrine on that. I understand about the law of the case. I'm more interested in a case that sort of tracks what happened here. I don't have a case directly on point with what happened here. But what I would tell the court is Ruan did not change authorization, and that's why there was no change with regards to these issues, and that's why the defendant is precluded from ---- Well, was there a change in the sense that the jury instruction given didn't match up to the regulation? This is the omission of usual course and legitimate. Wasn't that a fresh problem? That is a fresh problem, and that is a different issue of waiver in that case. So we can reach that issue? No, Your Honor, I would argue not, because that is invited error, because the definition or the instruction that was given in Instruction 20 is not an accurate reflection of the law and what defines authorization, but that instruction was given because the defendant clawed and fought to get it, and it does not exactly match 130604, but it's invited error that they got that instruction which did not match the law. And because of that, that's the Tierlink case that says intentional and knowing relinquishment. They waive their right to challenge it. So because of the difference between the jury instruction and the laws referred to by our experts, the issue is the wrong jury instruction, and they invited that error. And also, frankly, the errors are minuscule at best. It's not carbon copies, but all it did was remove the word legitimate and usual, but then it actually added more. It added that it means to practice medicine. It added aiming to prevent, cure, or alleviate the symptoms of disease or injury. And the expert testimony that was given comported with those, because while the defense has made much about the government's experts referring to 130604, that only happened twice according to their brief. They only cite actually four quotes in their brief on page 21 that they find problematic, but the crux, most, 90 percent of the expert testimony was actually about the medical standards of care, referring to the Federation of State Board of Medicine policy, referring to the chronic pain management toolkit, the CDC guidelines. And the actual opinions given by Dr. Shea was that there was no legitimate medical purpose, they weren't for the usual course of professional practice, they talked about the red flags, the illusion of practicing medicine, no medical necessity. How many contemporaneous objections were made to the expert testimony that's before us now? So, Your Honor, going through the ‑‑ there's only four quotes before this court that the defendant has talked about. Going first to Investigator Churchwell, he did object when Churchwell introduced 130604, but he withdrew that objection when it was made clear that we were referring to a regulation and not a statute, because counsel accidentally called it a statute when it's a regulation, and then when it was made clear that we were introducing it to further explain the investigator's actions, they withdrew their objections. So that quote's gone. Then with Dr. Shea testifying that a physician to be authorized to dispense a controlled substance, there must be a legitimate medical reason, he did object to that. But then counsel restated the question and stated a physician may dispense controlled substances for a legitimate medical purpose in the usual course of professional practice, which my colleague just conceded is completely appropriate. So that quote is done. Next, they ‑‑ what on paper looks like the worst quote that Dr. Shea just said, just as guilty, that was on cross‑examination. Mr. Brindley evoked that statement, and it was in hypotheticals he was proposing, and then when the statement was made, he actually didn't object, and my colleague actually said, I'm trying to clarify what you said, because I think you're right. So if there was any error, it was invited to err by my colleague when he elicited that by proposing these hypotheticals. And it wasn't even if we did, it's debatably problematic, because it was a hypothetical about this situation versus this situation, and it wasn't about Shaquille Conn himself. He was not saying Shaquille Conn is guilty, but since it was defense counsel eliciting it, and he said, I think you're right, there is no ‑‑ he's waived, it was invited, any error that possibly did exist with that quote. The final quote they point this court to is Gina Moore referring to the legitimate medical purpose, usual course of professional treatment, and the CFR 130604, federal law that must be followed. But as this court was going towards with their questions, she was just referring to the law. That wasn't actually her final opinion. As I stated ‑‑ Did they object to it? I do not believe so. I would want to go to the record to be positive, but I do not, I cannot, I won't tell the court positively at this time.  Well, let me shift a little bit then to the question of, for a moment anyway, to the question of law of the case. I'm somewhat struck by that argument that you're making, because how does that really work? Because if on remand and on a retrial, if that expert who was brought in was making, was testifying, I assume you'd be up here telling me if they did not object contemporaneously, as we're talking about now, to that expert testimony, you'd be claiming that they didn't preserve it. So if they have to object again, then how can it be law of the case that that testimony is immunized from consideration? It's law of the case because the defendant only gets one bite at the app. Well, one bite at law of the case means law. It doesn't mean contemporaneous testimony of someone about a particular issue, right? I would agree with that, Your Honor. And the reason that it applies in this case is because we used the exact same expert notice that we used in the first trial. It was the exact same proposed testimony, and the testimony effectively did not change. They still referred to, if the testimony did change, if there was some difference, I would agree. It's a new trial. There's new things that can come up. But that is not the case here, because what they are objecting to is the definition of authorization, and also in their opening brief, they, I think, were much more argumentative about even referring to legitimate medical purpose, which they've now conceded. But they didn't make those arguments in the first trial. So now they don't get to bring up this new issue that 130604 does not define authorization. Counsel, when these objections were made during the trial, did the government say they can't do that because of law of the case? We had briefs before that there was law of the case. Well, that's not my question. When it happened, did the government say anything about law of the case? I believe at the time we did not, Your Honor. So why wouldn't that just waive the issue? I think we preserved it by arguing beforehand that they were precluded from making these arguments, and the district court had agreed with us up until the last jury instruction conference when it changed its mind. Counsel, can I redirect you to the sufficiency challenge for the resulting in death count, and specifically Dr. Hale's testimony? And I just want to make sure I'm understanding your presentation on why that's not properly before us, in that my understanding is they raised essentially a Daubert challenge at the Rule 29 to Dr. Hale, which the district court found I think the words were spectacularly tardy. But help me understand the sufficiency challenge that's been raised on appeal in your argument for why we shouldn't properly consider it. Yes, Your Honor. So under the standard for sufficiency of the evidence, this court cannot weigh conflicting evidence nor consider the credibility. And the entire argument here is basically the credibility, the reliability. They're trying to say that she did not adequately contemplate the stroke or seizure issues. And because of that, it is more akin to a Daubert. It's going to the reliability of the expert testimony, not her ultimate opinion. And that is a Daubert challenge, not a sufficiency of the evidence. Because under sufficiency of the evidence as well, this court is not to consider the conflicting evidence. And the evidence must be looked at in the light most favorable to the government. So when we are considering Dr. Hale's testimony, there is no conflicting evidence that she was cross-examined thoroughly, but the jury is allowed to disregard that cross-examination and believe her, and they did. And because of that, this challenge, more akin to a Daubert, is not appropriate. And under the sufficiency of the evidence, there was more than sufficient evidence. Before you even get to Dr. Hale's testimony, Jessica Birch filled Shaquille Khan's prescriptions three days before her death. Vargas testified that Birch was crushing up her pills and appeared intoxicated the night before her death. Then she was found in the front lawn, passed out. Finally, there was the green powder, which matched the 15-milligram oxycontin pill found under her nose. With those facts alone, we're getting to some pretty close, reasonable inferences of what caused Jessica Birch's death. And then we had Dr. Hale's testimony at length, and contrary to my colleague's arguments about this being Ipsy-Dixit, she did testify at length about why she ruled out the stroke, why she ruled out the seizure. She reviewed the medical reports, and as Kamen Correll from the 3rd District says, it's perfectly acceptable for a physician to rely upon and examine tests, the examined tests performed by other medical practitioners. So she relied on those, and she gave thorough rationale for why she did not believe that the stroke or seizure were possible. As the district court found, who sat through all the evidence, she sufficiently reasoned her explanation. It was reliable and not suspect. And I would just say briefly, with regards to the sufficiency of the evidence for the CCE, there's five co-conspirators where it is overwhelming evidence that they were working in concert and Shaquille Khan was managing them, and then we have four extra on top of that. Lynn and Nabil were working for him, with him. Nabil was his boogeyman who carried a gun, who enforced his prices. Lynn helped him doctor his paperwork once they knew they were under investigation. Paul Beland, as the district court said, was a quintessential drug dealer, and the calls recorded with The Wire show their drug dealing, show that Dr. Khan knew what he was doing was wrong. Denny Antelope and Chris Muehlhausen were also mid-level distributors for Shaquille Khan, so there's more than sufficient evidence. And for those reasons, the United States asks that this court affirm the defendant's convictions. Thank you. Mr. Brindley, please proceed. Thank you, Your Honor. I think the critical issue with respect to either the invited error claim or the law of the case claim is that the landscape of the law between the first trial and the second changed. Authorization became the key issue. And, you know, arguing to the court for a statutory-based instruction that eliminates usual and eliminates legitimate, that was the right answer from the court, and the government has never articulated in its briefing here the court was wrong. And so arguing for what the right instruction is on the law, considering the law at the time of the trial, certainly can't be called invited error. I mean, that's just silly. Authorization was the key issue, and the problem here is ultimately the instruction the judge gave contradicted opinion testimony given by experts, and there's no way to say that didn't impact the jury. And for that, Your Honors, we would ask that you remand the case for a new trial. Thank you, counsel. Case is submitted. Thank you.